UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JOSEPH CONEY,

                Plaintiff,                                        Hon. Robert Holmes Bell

v.                                                      Case No. 1:12-CV-800

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.
_____/

## REPORT AND RECOMMENDATION

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C.

§ 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim

for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and

XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative

record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall

be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges

to submit proposed findings of fact and recommendations for disposition of social security appeals,

the undersigned recommends that the Commissioner's decision be **affirmed**.


## STANDARD OF REVIEW

        The Court's jurisdiction is confined to a review of the Commissioner's decision and

of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and*

*Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security

case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 41 years of age on his alleged disability onset date. (Tr. 120). He successfully completed high school and worked previously as a prep cook, machine operator, cashier/stocker, and general laborer. (Tr. 25, 45, 150-57).

Plaintiff applied for benefits on June 24, 2009, alleging that he had been disabled since December 10, 2008, due to arthritis, sleep apnea, back pain, diabetes, high blood pressure, right arm immobility, diverticulitis, obesity, and depression. (Tr. 120-27, 134). Plaintiff's applications were denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 68-119). On April 11, 2011, Plaintiff appeared before ALJ Deborah Rose with testimony being offered by Plaintiff and vocational expert, Michael Wiseman. (Tr. 34-67). In a written decision dated April 29, 2011, the ALJ determined that Plaintiff was not disabled. (Tr. 11-28). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-4). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

On October 14, 2003, Plaintiff participated in an electromyography examination of his left upper extremity the results of which were "normal" with "no evidence of radicular changes." (Tr. 363). On June 15, 2004, Plaintiff participated in an MRI examination of his right shoulder the results of which revealed "evidence of supraspinatus tendon tear." (Tr. 355).

On September 8, 2004, Plaintiff underwent arthroscopic surgery to repair a rotator cuff tear of the right shoulder. (Tr. 346-47). On September 20, 2004, Plaintiff reported that his right

shoulder "feels good" and that "physical therapy is going okay." (Tr. 342). On October 12, 2004, Plaintiff reported that he was "doing actually very well" and that his pain "has decreased." (Tr. 341). Plaintiff was instructed to "work more aggressively on strengthening exercises with therapy." (Tr. 341). Treatment notes dated December 6, 2004 indicate that Plaintiff "has full range of motion" and that "his strength is a 4+ out of 5 or better." (Tr. 338). Plaintiff also reported that "the pain is far less than it was prior to the surgical procedure." (Tr. 338).

On December 15, 2008, Plaintiff participated in a CT scan of his abdomen and pelvis the results of which revealed "colonic diverticula without diverticulitis. Negative study otherwise." (Tr. 393).

On March 18, 2009, Plaintiff met with Ann Winsor at Summit Pointe. (Tr. 248-75). Plaintiff reported "he is going through a lot and trying to cope with things." (Tr. 248). Specifically, Plaintiff reported that "he is married," but also "has a girlfriend and they have a four month old baby." (Tr. 248). Plaintiff reported current drug and alcohol use. (Tr. 250-51). Plaintiff also reported that he "worked almost 12 years" at one location until "they closed in 2006." (Tr. 248).

When Plaintiff was asked what he hoped to achieve by participating in therapy, he "kept repeating he didn't know and he was only coming for his girlfriend." (Tr. 272). Plaintiff's mood was characterized as "irritable," but the results of a mental status examination were otherwise unremarkable. (Tr. 254-56). Plaintiff was diagnosed with: (1) depressive disorder; (2) alcohol abuse; and (3) cannabis abuse. (Tr. 256). Plaintiff's GAF score was reported as 38.[1] (Tr. 256).

---

[1] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 2000) (hereinafter DSM-IV). A GAF score of 38 indicates that the individual is experiencing "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." DSM-IV at 34.

On July 22, 2009, Plaintiff completed a questionnaire regarding his activities. (Tr. 162-69). Plaintiff reported that he cares for his infant son, performs errands for his mother, watches television, and uses the internet. (Tr. 162). Plaintiff also reported that he drives, shops, and "occasionally" vacuums. (Tr. 164-65).

On the same day, Plaintiff's girlfriend, Marie Campbell, completed a report regarding Plaintiff's activities. (Tr. 174-81). Campbell reported that Plaintiff prepares meals, cares for his personal needs, watches television, vacuums, and cares for his son. (Tr. 174-76). Campbell reported that Plaintiff leaves the residence "two to three times a day" and is able to drive a car and go shopping. (Tr. 177). Campbell also reported that Plaintiff "plays on [the] computer." (Tr. 178).

On October 10, 2009, Plaintiff participated in a consultive examination conducted by Dr. Samer Elfallal. (Tr. 288-92). Plaintiff reported that he was disabled due to arthritis, sleep apnea, diabetes, hypertension, right shoulder rotator cuff problems, diverticulitis, and obesity. (Tr. 288). The doctor reported that Plaintiff was 66.5 inches tall and weighed 290 pounds, but walked with a "normal" gait. (Tr. 289-90). The results of a physical examination revealed the following:

> Extremities and Musculoskeletal: There are no obvious bony deformities. Peripheral pulses are easily palpable and symmetrical. There is no edema. There is no evidence of varicose veins. There is no tenderness, erythema, or effusion of any joint. The patient had some pain inhibition but has full range of motion. The hands have full grip and digital dexterity. The patient did not exhibit any difficulty getting on and off the table, heel-toe walking, and squatting are normal. Straight leg raising test is negative and no paravertebral muscle spasms are present.
>
> Neuro: Cranial [nerves] II-XII are grossly intact. Strength is 5/5 in all extremities. Reflexes are trace/4 throughout. No sensory deficits are appreciated on examination. There is no atrophy or fasciculations.

(Tr. 290-91).  With respect to Plaintiff's complaints of sleep apnea, the doctor reported that Plaintiff "has not used a CPAP machine at home as prescribed."  (Tr. 291).  The doctor further observed that Plaintiff "does not check his blood sugars at home."  (Tr. 291).

On October 27, 2009, Plaintiff participated in a consultive examination conducted by licensed psychologist Tim Strang, Ph.D.  (Tr. 295-98).  Plaintiff reported that he was disabled "due to arthritis, sleep apnea, back pain, diabetes, hypertension, problems with his right arm, diverticulitis, being overweight and depression."  (Tr. 295).  The doctor observed that Plaintiff "appeared to be very lethargic and groggy...spoke with this eyelids closed or half closed and his words were slurred."  (Tr. 295).  Plaintiff acknowledged that his alcohol use "has been a problem" and that he also "uses some marijuana."  (Tr. 296).  When asked about his activities, Plaintiff "was not able to provide any specifics about his daily activities or routine."  (Tr. 296).  Plaintiff was likewise unable to provide any specific information "about any sort of depressive episode."  (Tr. 295).  Aside from the aforementioned lethargy and grogginess, the results of a mental status examination were unremarkable. (Tr. 297-98).  Plaintiff was diagnosed with depressive disorder and alcohol dependence.  (Tr. 298).  Plaintiff's GAF score was rated as 53.[2]  (Tr. 298).

On November 15, 2009, Ron Marshall, Ph.D. completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations.  (Tr. 303-16).  Determining that Plaintiff suffered a non-specific disturbance of mood, the doctor concluded that Plaintiff satisfied the Part A criteria for Section 12.04 (Affective Disorders) of the Listing of Impairments.  (Tr. 304-12).  The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for this particular

---

[2]  A GAF score of 53 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

6

Listing. (Tr. 313). Specifically, the doctor concluded that Plaintiff experienced mild restrictions in the activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and never experienced extended episodes of decompensation. (Tr. 313). The doctor also reported that Plaintiff experienced "behavioral changes or physical changes associated with the regular use of substances that affect the central nervous system." (Tr. 311).

Dr. Marshall also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 299-302). Plaintiff's abilities were characterized as "moderately limited" in seven categories. (Tr. 299-300). With respect to the remaining 13 categories, however, the doctor reported that Plaintiff was "not significantly limited." (Tr. 299-300).

On March 17, 2011, Dr. Horace Davis completed a form regarding Plaintiff's "ability to engage in work related activities." (Tr. 421-24). With respect to Plaintiff's "ability to deal with work stress," the doctor reported that Plaintiff experienced a "severe limitation (100%)." (Tr. 422). The doctor also reported that Plaintiff's "pain or other symptoms" would "constantly" impair Plaintiff's ability "to remain on task." (Tr. 422).

Dr. Davis reported that Plaintiff can continuously sit for 60 minutes and stand for 60 minutes. (Tr. 422). The doctor reported that during an 8-hour workday, Plaintiff can sit and stand/walk for "less than 2 hours" each and required a job with a sit/stand option. (Tr. 422). The doctor reported that Plaintiff can "occasionally" lift up to 10 pounds but can "never" lift 10 pounds or more. (Tr. 423). The doctor reported that Plaintiff would need to spend "50%" of the work day

with his legs elevated above his waist. (Tr. 423). The doctor reported that Plaintiff experienced "significant limitations" with respect to his ability to perform repetitive reaching, handling, or fingering activities. (Tr. 423).

At the administrative hearing, Plaintiff testified that he does not use the CPAP machine that was prescribed for him to treat his sleep apnea. (Tr. 47). Plaintiff testified that he drinks alcohol, but does not believe that he had a problem with alcohol abuse. (Tr. 50). Plaintiff also testified that he used marijuana "two or three times a week." (Tr. 51). Plaintiff reported that he experienced difficulties concentrating and performing tasks at a regular pace. (Tr. 52). Specifically, Plaintiff reported that when he washes the dishes he has to "sit down and take a break" after washing only the spoons and forks. (Tr. 52). Plaintiff reported that due to back and knee pain he has to lay in a recliner at home with his "feet up in the air." (Tr. 53). Plaintiff also reported that "about 4" days a week his back hurts so bad that he is unable to even get out of bed. (Tr. 53-54). Plaintiff reported that "maybe once or twice a week" he experiences "dizzy spells" that last 30 to 60 minutes. (Tr. 58). Plaintiff reported that he cannot lift more than 10 pounds or sit for longer than 20 minutes. (Tr. 58). Plaintiff reported that he can stand for 10 to 20 minutes and can walk "about a half a block, maybe." (Tr. 59). Plaintiff also reported that when he wears his contact lenses he is able to see well enough to drive a vehicle. (Tr. 60).

## <u>ANALYSIS OF THE ALJ'S DECISION</u>

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*,

---

[3] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

      The ALJ determined that Plaintiff suffers from: (1) arthritis; (2) obesity; (3) diabetes mellitus; (4) hypertension; (5) obstructive sleep apnea; (6) depression; and (7) history of alcohol and marijuana abuse, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 13-17).

      The ALJ next determined that Plaintiff retained the capacity to perform light work subject to the following limitations: (1) he can only occasionally climb, balance, stoop, kneel, crouch, and crawl; (2) he can only occasionally reach overhead with his right (dominant) upper extremity; (3) he can have only superficial interaction with co-workers, supervisors, and the public; and (4) he is limited to the performance of simple, routine tasks. (Tr. 17). The ALJ determined that Plaintiff could not perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964.

      While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt

to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Michael Wiseman.

The vocational expert testified that there existed in this region approximately 6,750 jobs at the light level of exertion and 11,475 jobs at the sedentary level of exertion which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 61-65). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

I.        **The ALJ's RFC Determination is Supported by Substantial Evidence**

Plaintiff asserts that the ALJ failed to sufficiently account for his obesity when determining his residual functional capacity. Specifically, Plaintiff argues that the ALJ failed to comply with the requirements of Social Security Ruling 02-1p, Titles II and XVI: Evaluation of Obesity, 2000 WL 628049 (S.S.R., Sept. 12, 2002).

As the Sixth Circuit has made clear, Social Security Ruling 02-1p "does not mandate a particular mode of analysis, but merely directs an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Nejat v. Commissioner of Social Security*, 359 Fed. Appx. 574, 577 (6th Cir., Dec. 22, 2009) (citation omitted); *see also*, *Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 412 (6th Cir., Jan. 31, 2006) ("[i]t is a mischaracterization to suggest that Social Security Ruling 02-01p offers any particular procedural

mode of analysis for obese disability claimants"). The ALJ recognized that Plaintiff suffers from obesity and specifically found that such constituted a severe impairment. The ALJ analyzed the entire record in assessing Plaintiff's residual functional capacity. The ALJ's RFC determination sufficiently accounts for Plaintiff's obesity and the limitations imposed by such. This argument is, therefore, rejected.

## II.        The ALJ Properly Evaluated the Medical Evidence

As noted above, Dr. Davis opined that Plaintiff is limited to a greater degree than recognized by the ALJ. Specifically, Dr. Davis reported that Plaintiff possesses no ability to deal with work stress and that Plaintiff's "pain or other symptoms" would "constantly" impair Plaintiff's ability "to remain on task." The doctor reported that during an 8-hour workday, Plaintiff could sit and stand/walk for "less than 2 hours" each and required a job with a sit/stand option. The doctor reported that Plaintiff can "occasionally" lift up to 10 pounds but can "never" lift 10 pounds or more. The doctor reported that Plaintiff would need to spend "50%" of the work day with his legs elevated above his waist. The doctor reported that Plaintiff experienced "significant limitations" with respect to his ability to perform repetitive reaching, handling, or fingering activities. Plaintiff asserts that he is entitled to relief because the ALJ failed to provide sufficient reasons for discounting Dr. Davis' opinions.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by

medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to her assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

The ALJ discussed in great detail the opinions offered by Dr. Davis. (Tr. 22-24). The ALJ discounted Dr. Davis' opinions because such are inconsistent with the doctor's own contemporaneous treatment notes, the objective medical evidence of record, and the findings of other medical professionals. (Tr. 22-24). The ALJ further noted that Dr. Davis does not even appear to have treated Plaintiff for his emotional impairments, the basis for some of the most limiting aspects of his opinion. (Tr. 23). As the evidence detailed above reveals, the ALJ's assessment of Dr. Davis' opinion is supported by substantial evidence. The record fails to demonstrate that Plaintiff suffers from any impairment or combination of impairments imposing such extreme limitations on Plaintiff's ability to function. The doctor's opinion is likewise contradicted by Plaintiff's reported activities. In sum, the ALJ's conclusion to afford less than controlling weight to the opinions in question is supported by substantial evidence.

**III.          The ALJ Properly Discounted Plaintiff's Subjective Allegations**

At the administrative hearing, Plaintiff testified that he experiences great difficulty concentrating and performing tasks at a regular pace.  Plaintiff testified that due to back and knee pain he has to lay in a recliner at home with his "feet up in the air."  Plaintiff also testified that "about 4" days a week his back hurts so bad that he is unable to get out of bed and, moreover, that "maybe once or twice a week" he experiences "dizzy spells" that last 30 to 60 minutes.  Plaintiff argues that if his testimony "concerning his fatigue and pain and the need to rest frequently during the day" had been believed such would have led to a finding that he is disabled.  The ALJ, however, found that Plaintiff was "not entirely credible." (Tr. 21-22).  Plaintiff argues that the ALJ improperly assessed his credibility.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same).  As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled."  20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009).  Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively

established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative

law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, - - - Fed. Appx. - - -, 2013 WL 5496007 at *3 (6th Cir., Oct. 4, 2013) (citation omitted).

The ALJ discounted Plaintiff's allegations of extreme limitations on several grounds. The ALJ found Plaintiff's reported activities inconsistent with the allegation that Plaintiff suffers work preclusive pain or fatigue. (Tr. 22). The ALJ also noted that Plaintiff has not been compliant with certain instructions from his care providers. (Tr. 22). The ALJ noted that the objective medical evidence of record is inconsistent with Plaintiff's subjective allegations. (Tr. 22). Finally, the ALJ noted that while Plaintiff alleges great limitation as a result of his emotional impairment, he "has received no mental health treatment since March 26, 2009." (Tr. 22). As these various reasons are supported by the evidence of record, as detailed above, the Court concludes that the ALJ's decision to accord limited weight to Plaintiff's subjective allegations is supported by substantial evidence.

IV.        **The ALJ Properly Relied on the Vocational Expert's Testimony**

Finally, Plaintiff asserts that the ALJ, in concluding that he was not disabled, relied upon the response to an inaccurate hypothetical question. While the ALJ may satisfy her burden through the use of hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).

As noted above, Dr. Marshall completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. The doctor characterized Plaintiff's abilities as "moderately limited" in seven

categories, but determined that Plaintiff was "not significantly limited" in the remaining 13 categories. At the administrative hearing, Plaintiff asked the vocational expert to assume that Plaintiff experienced the limitations identified by Dr. Marshall and, moreover, "to assume that moderate limitation means somewhere between 25 and 50 percent loss of function in those areas." (Tr. 66). The vocational expert responded that "with that definition," there would exist no work which Plaintiff could perform. (Tr. 66). Plaintiff asserts that given the vocational expert's testimony, the ALJ erred by failing to find he is disabled.

In support of his position, Plaintiff cites to three decisions. Plaintiff first cites to *Bankston v. Commissioner of Soc. Sec.*, 127 F.Supp.2d 820 (E.D.Mich. 2000). In *Bankston*, the vocational expert was asked to assess the claimant's ability to work, assuming he "often" experienced deficiencies in concentration, persistence, and pace. *Id.* at 823. The vocational expert was instructed that "often" was to "be interpreted as an inability to concentrate one-third of the time." The vocational expert testified that if the claimant was unable to concentrate one-third of the time, no work existed which he could perform. The ALJ ultimately concluded that the claimant was not so limited and, therefore, not disabled. *Id.*

The claimant appealed to the district court, and the magistrate judge to whom the matter was referred issued a report and recommendation affirming the ALJ's decision. The district court disagreed, however, concluding that the claimant was disabled. In so doing, the district court first found that the ALJ failed to comply with the treating physician doctrine, and further determined that the claimant had established the credibility of his allegations of disabling pain, which rendered him disabled. *Id.* at 824-25.

The district court then turned its attention to the definition of the term "often" as used in the hypothetical question posed to the vocational expert. The court determined that "often" correlated to fifty percent, and concluded that given the vocational expert's testimony that an inability to concentrate one-third of the time was work preclusive, such a deficiency must also be work preclusive if "often" was instead defined so as to represent an inability to concentrate one-half of the time. *Id.* at 826-27. Implicit in the court's analysis of this particular issue is that the court found the assertion that the claimant "often" experienced deficiencies in concentration, persistence, and pace to be supported by substantial evidence. This conclusion, together with the vocational expert's testimony, and the court's definition of the term "often," led the court to conclude that the claimant was disabled on this basis as well. *Id.* at 825-27.

The Court does not interpret *Bankston* as standing for the proposition that a claimant who "often" experiences deficiencies in concentration, persistence, and pace (or who experiences moderate limitations in this area) is automatically disabled, as Plaintiff contends. Such an interpretation would, in effect, rewrite the Social Security Act by inserting into the five-step sequential process outlined above an additional step at which a dispositive finding regarding a claimant's disability can be made. Other courts have likewise rejected this aspect of the *Bankston* decision. *See, e.g., Benton v. Commissioner of Social Security*, 511 F.Supp.2d 842, 847 (E.D. Mich. 2007); *Burch v. Commissioner of Social Security*, 2009 WL 37187 at *13 (E.D. Mich., Jan. 7, 2009). Rather, *Bankston* merely articulates a precise definition of the term "often," which in the context of the facts of that particular case led to the conclusion that the claimant was disabled. As the record in this matter fails to demonstrate that Plaintiff's limitations with respect to concentration,

persistence, and pace rendered him disabled or are inconsistent with the ALJ's RFC determination, the Court finds *Bankston* unpersuasive and inapposite.

Plaintiff next relies on *Elias v. Commissioner of Social Security*, 2010 U.S. Dist. Lexis 13054 (E.D. Mich., Feb. 12, 2010). According to Plaintiff, this case "holds that moderate limitation in concentration, persistence and pace equals 20% loss of function which the [vocational expert] testified would be work preclusive." This argument fails for two reasons. First, the *Elias* court did not hold that a "moderate limitation in concentration, persistence and pace equals 20% loss of function." Instead, the *Elias* court simply held that if an ALJ is going to rely on the response to a hypothetical question posed to a vocational expert, the hypothetical question must accurately identify the claimant's limitations. *Id.* at *23-33. Second, the vocational expert in this case did not testify in this case that a "20% loss of function. . .would be work preclusive." As noted above, the vocational expert testified that if Plaintiff experienced "between 25 and 50 percent loss of function" in certain areas of functioning that such would be work preclusive. As detailed above, however, the record does not support the contention that Plaintiff suffers such extreme limitations with respect to concentration, persistence, or pace or any other area of functioning.

Finally, Plaintiff cites to *Green v. Commissioner*, 2009 WL 2365557[4] for the proposition that "moderate limitations" as to concentration, persistence, or pace would be work preclusive. The *Green* court made no such holding. Instead, the *Green* court simply reiterated the uncontroversial notion that if an ALJ is going to rely on the response to a hypothetical question posed to a vocational expert, the hypothetical question must accurately identify the claimant's

---

[4] Plaintiff identified the cite to this case as 2009 WL 2364447 which relates to certain regulations promulgated by the Florida Department of Education. It seems clear from the case name and discussion therein that this is the particular case to which Plaintiff intended to cite.

limitations. *Id.* at *9-10. Again, the evidence in this matter does not support Plaintiff's contention that he suffers from limitations with respect to concentration, persistence, or pace (or any other area of functioning) that are greater than those recognized by the ALJ in her RFC determination.

The hypothetical question which the ALJ posed to the vocational expert asked whether there existed jobs which an individual could perform consistent with Plaintiff's RFC, to which the vocational expert indicated that there existed approximately 18,000 such jobs. The ALJ's RFC determination is supported by substantial evidence and there was nothing improper or incomplete about the hypothetical questions the ALJ posed to the vocational expert. The Court concludes, therefore, that the ALJ properly relied upon the vocational expert's testimony.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,


Date: January 31, 2014                    /s/ Ellen S. Carmody
                                          ELLEN S. CARMODY
                                          United States Magistrate Judge